The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. We want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases, good lawyers, and looks like we've drawn a little bit of a crowd. In the first case, number 241355, Walmart Business Trust v. Quarterfield Partners. Mr. Malik, nice to have you with us. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Louis Malik for the Appellants, Quarterfield Partners LLC at Al. This case is about construction of two commercial leases, and we believe the District Court committed multiple errors that really flowed from each other. The Court ultimately ordered specific performance of a purchase option that's really a conditional purchase option, which turns on a condition that has not yet occurred, and then issued a damages ruling in Walmart's favor that takes no account for the fact that Walmart has occupied these properties rent-free for more than five years now and still has not paid for them. So we're asking that this Court reverse an error of effect. Does your case depend on us finding that it is a conditional option? We think that it is a conditional option, yes, Your Honor. So is that a condition preceding for you to prevail here? I think we have multiple arguments. I think the Court's errors really flowed from each other, and it starts with finding that it was a true option instead of a conditional option, but we believe the Court also erred in its construction of the other terms of this option. Well, the reason I ask that is since it's a state law question whether or not the option is a conditional option under Maryland law, and I think opposing parties say it's not, is there any benefit to us having the Supreme Court of Maryland tell us whether or not it is? Your Honor, in this case, I think the terms of this particular option are clear enough that I'm not sure there is, but that is certainly an option if the Court decides to do that, but we think that the Court can decide this case and should decide this case based on the briefs that we submitted and based on the text of the option itself. Before I address the merits, I would like to say a word about subject matter jurisdiction. The Court asked for a supplemental brief, and we submitted one. The plaintiff at Belize did not respond, and there may still be an open question here because they've alleged all the record says about their identities and their citizenship is that they're a Delaware statutory trust with Principal Places of Business in Arkansas, and under the Supreme Court's ruling in Americold Realty, that's really not enough for the Court to decide the question. The citizenship of a statutory trust depends on the citizenship of its members or its owners, its shareholders. So I'll leave that for the Abilese to address, but I'd like to address the merits. Do you have any position or information about it other than just that it's unknown? I do not, Your Honor. No one's made any motions in that regard at all. That's correct, Your Honor. Either in the district court or here. That's correct. So our first point of error is that the district court erred in determining that Section 27 of these leases gave Walmart an enforceable and unconditional option, and the leases are really the same in all material respects. So if you're right, and I'm kind of jumping through because we have read the briefs. That's right. And if my question you think involves some assumption that's contrary to your argument, please let me know. But my question is this. If your position is right, imagine that Quarterfield never submitted a notice and offered to sell the property to Costco. Would that be a violation of the lease? Your Honor, we think that what Walmart has purchased here is a cloud on title. What? A cloud on title. And I think that's why we're here in this litigation is that Walmart has this right, whatever it might be. What's the answer to my question? Could they do that without breaching the lease or not? I think Walmart certainly has equitable rights under the lease that they would assert in an attempt to prevent the sale. So would they be saying there that Quarterfield violated a good faith obligation under the lease? I think that's part and parcel of Judge Quattlebaum's question. It's kind of odd to say they'd have rights. I mean, I'm asking you, would it be a violation of the lease? I realize it's hypothetical, but it seems like that's a logical extension of your question. Either, as Judge Agee says, there's express provision, maybe it's an implied covenant in there. You're talking about equitable stuff. Maybe the answer is that's completely fine. I'm just trying to figure out what's your position. If you've said it, I haven't really understood it.  Your Honor, I think my position is that if Quarterfield did sell to Costco, it would be subject to Walmart's purchase option rights. So does that mean Walmart has, in your view, a right of first refusal? It's a conditional option. I think a right of first refusal really depends on there being an offer from someone else that Walmart would then have the opportunity to meet. But that's not what we're saying. So using Judge Quattlebaum's example, Costco offers your clients two times X, and they'd like to sell for that. So my question is, in that situation, does Walmart have a right of first refusal? I think Walmart would have a right to assert its rights with respect to the sale. You don't like to answer the questions, do you? I don't understand you lawyers. It sounds like you're saying that Walmart could make some arguments. I mean, everyone can make some arguments. It sounds like you're – I mean, there's nothing wrong with saying that, yeah, we can do that under the lease. Or maybe you say we can't do it. But just saying that Walmart has some arguments doesn't seem – seems to be saying you think you can do that under the way the lease was drafted. That may be right. I mean, you don't need to back away from it if you think that's your position. I'm just – but you kind of need to tell us. Your Honor, I think the answer is yes. Hortofield could do that. It has not done that. I think this litigation started because there was an issue about a sale. That's not really in the record. But yes, I think Hortofield could sell to someone else, and Walmart would have the ability to assert the rights that it has as an option holder. Our position is not that Walmart doesn't have an option. It's that it has an option that's dependent on a condition that hasn't occurred yet. And the way – and that means that it hadn't happened yet, and you could – whether it happens depends on Hortofield sending the notice. And if they don't do it, that option never comes to – the event that allows them to exercise it never happens. And so they just – that right never comes to pass. That is correct, Your Honor. Yes. So our position, though, is that the district court really misconstrued this option by reading out the two sentences that Walmart drafted. But it's two sentences that we think are the most important part of the option, which is the – If they don't send a notice, the parties contemplated that the time period for exercising it would move. The third sentence got kind of gibberish with nine years in there.  But putting aside that gibberish, it seems to say – or I think it says something to the effect that if the notice isn't given in year nine, it moves to the year following the second notice or something to that effect. That's basically correct, Your Honor. So now I guess your position is, well, you still – that contemplates us giving the notice. If we don't give it, it doesn't arise. But is a way of reading that – is the better way of reading that not that, okay, the parties contemplated what would happen if they didn't give the notice, and they're talking about moving the period, not eliminating the period? It does talk about moving. And I – Corderfield could decide tomorrow to give notice. I'm not saying they will, but it's possible. In which case, the option period would move such that it would start after the second notice is given. So the lease has multiple, if I'm remembering, five-year renewal options. Yes, Your Honor. So just theoretically, in your view of the case, Corderfield could give – the option term would move, and Corderfield could give the option in year 50. Yes, Your Honor. Okay. But really, we think this is a conditional option under Maryland law, under the Straley case. And Maryland law does allow for these without them being – Hopefully none of the lawyers here today wrote this. I certainly did not, Your Honor. And I don't believe any of the lawyers sitting here before you did. We are – my firm has only been counsel since this appeal, this present appeal. That would be a good question not to answer. But under the Straley case, there are multiple kinds of options under Maryland law. And the courts have upheld options that are conditional, and even rights of first refusal, which are entirely dependent on landowners' desire to sell. Yes, the rights of first refusal at least give the – a question it seems like your position needs to grapple with is this. I mean, I understand that reading. But there's Maryland law that frowns on promises that are illusory. And it seems like your position is this is totally up to you that, unlike a right of first refusal, which gives the recipient of that right superior to the rest of the world, this gives Walmart no rights compared to the rest of the world. And why is it not illusory and problematic on that basis? I think Walmart does have rights superior to the rest of the world.  Because they have – We just asked you about Costco and apparently not the Costco. Your Honor, I think the way it would work would be if Quarterfield did sell to Costco, Walmart would have the right to come in and say, wait a minute, we have this purchase option. Costco takes – But you think they'd lose. You just said you think they'd lose. The right gives you to do that. I mean, I think you – I mean, it sounds like your position is this particular provision really doesn't give Walmart anything. It gives them the right to say that we have an option on this property. It gives them the right – you're saying their only right is to file a lawsuit. Well, that's what they did here, Your Honor. That's why we're here. I know, but you think it's a suit that would lose. So if you think it's a suit that would lose, I mean, yeah, sure, you can file a lawsuit. But, you know, my law clerk who worked on this could file a lawsuit about it. I mean, it just – why don't you just say that like you said? It seems like we're going down the same road before that you don't want to admit it, that this – I mean, it would seem to me you would say, well, maybe that is, in a narrow sense, some right that is – that's completely within the purview or the control of Quarterfield. But it's part of a multi-page contract with lots of provisions that aren't a loser, and it's just part of – it's part of the bait and bargain. But you keep seeming not to want to accept the logical extension of your argument. Yeah, well, Your Honor, I guess that is a logical extension, and this is a very long lease drafted by very sophisticated parties here. And this is the language that they came up with, which I think is the language that the parties are stuck with. And under Maryland law, I think it's the language that the court also was bound by. And ignoring the provision that the option period would move and assuming that it really happened without notices being given, we think the court drafted a new contract for the parties, which is – So what would happen, just theoretically, ten years from now, the lease has gone on, and Quarterfield comes to Walmart and says, you know, we're not inclined to give the option. We like the money we're making under the lease. However, if you were to give us 3X, we'll go ahead and sell it to you and send you a separate notice that doesn't go by the purchase terms of the agreement. What happens then? I think that would be a new agreement with Walmart, and Walmart could say we agree or we don't. Okay. So the lease sets a formula for setting what the purchase price will be. But you would – in your view, that wouldn't breach the lease. That would be perfectly within Quarterfield's rights, correct? I think any party can ask for a modification of an agreement. But that's not asking for a modification, as I understand it. That's saying it's a new agreement, but it's not – maybe it's a modification, but that doesn't constitute a breach in your view. No, I don't believe so, Your Honor. Is – never mind. I think I understand. You can finish up.   So on the third point of error, which is about the timing of this and when the notice period was – the court deemed it to occur, we think that the much better reading is that the 11th year of this lease means the 11th year of the initial term. That's the fair reading of the provision. And the initial term begins on the effective date, not on the rank commencement date. The court should have applied that reading instead, instead of the extrinsic evidence that really, under Maryland law, was not admissible in the first place. And I think with that, I'll reserve for rebuttal. Thank you, Your Honor. Thank you very much, sir. Mr. Ray? Good morning, Your Honors, and may it please the court. I think it's important for me to answer Judge Agee's question first. I did not draft the language of this lease. That might be one you'd want to lie about even if you did. No comment, Your Honor. This, in some ways, is a very straightforward purchase option. In some ways, it is ambiguous. As to the purchase option itself, the district court held that the language is clear and unambiguous. From the end of the 10th year of this lease until the end of the 11th year of this lease, lessor hereby grants to lessee an option to purchase the premises on the terms and conditions set forth. The sentence that my opposing counsel relies . . . I know the district court did that, and maybe that's the right answer. But then you have the second sentence. Notwithstanding the foregoing, the option term shall not commence until the lessor sends two 30-day notices. Correct. And it seems under that interpretation, that writes that sentence out of the lease. I don't think it does, Your Honor. I think it modifies the option term, but not the grant of the option. This is not a right of first refusal. And the cases on which my opposing counsel has relied, particularly the Straley case, is limited to a right of first refusal. And it's interesting that in the case below, in the trial below, Quarterfield argued in one instance that it was a right of first refusal and then withdrew that argument and are attempting to revisit it through this concept of conditional options. But why isn't . . . I mean, this is a hard . . . To me, this is pretty hard because of the way it's drafted. But Judge Agee, I think, makes a good point. Sure, the first sentence says what it says. And if that was the end of it, this would be easy. But it's got the second sentence that says, notwithstanding the foregoing, the option doesn't begin until the second notice is given. That hasn't happened. That's correct. So why are we here? The lease is still going. You haven't got a second notion or a second notice. I mean, as I understand it, the lease term has got a couple more years on it. Yes. Why are we here? The lease term doesn't, actually. They've passed their 10-year. They're in one of the lease option periods. But the lease is still in effect. I think we're here if you read that provision in its entirety with the entire option language. The next sentence, in fact, reads, in the event Lesser fails to send such notice . . . And keep going. What's it say? In the event that Lesser fails to send such notice at the end of the ninth year, I recognize that's wrong, of this lease, then the option term shall be moved, such that it is for a one-year period, commencing 30 days after the second option notice has been received. And opposing counsel says, yeah, that would apply, and it could apply in year 50. Yes. And I disagree. I think that the fundamental question for the court is, is the notice provision, the two sentences, an obligation or a discretionary right? If this court deems that it is, in fact, an obligation, which is what the district court deemed below, based on the fact that it says they shall send notice and has consequences for a failure to send notice, if it is deemed an obligation, then you also have to read the next sentence, which is Lessee, Walmart . . . Where does it say they shall put an obligation that they shall send notice? I'm sorry, Your Honor. It says the option term shall not commence until Lessor sends notice.  That's different. Like the opposite of what you said. I mean, maybe one could argue that's the opposite of what you said, that there is no obligation until the notice is sent. One could argue that if you don't look at the language in the event Lessor fails to send notice. Yes. And I think that helps you. You have to put those together. I think that helps you. It does. I'm sorry, Your Honor. But it comes with some uncertainty and maybe some language that doesn't. To me, the fact that it talks about moving, as far as that goes, helps. But it still only says moving into the year until that second notice has been received. It does, Your Honor. And there's nowhere that says they have to send it. I think that there isn't. You're correct. And I think that you need to read it in context as well with the architecture of the entire paragraph and the ultimate outcome. If they don't send the notice, you are negating the option altogether. Why would the parties enter into a right of first refusal and have a specific, a very detailed formula for setting the price for the property? Yeah. And attaching a 30-some page purchase agreement that shall be used and setting a feasibility period of 90 days and a closing date of 120 days, if all the landlord had to do is say, we're not going to send you the notice, you never get to buy the property. All of that gets negated. And in answer to, I think it was your question, Judge Agee, if they could turn around and sell it to another party for 2X, then they're basically negating all of Walmart's rights to purchase it at 1X. Well, Walmart has lots of rights under the lease. It's got a right to occupy. It's got a set rent term. I mean, Walmart's hardly a little old lady in the negotiating sense. I mean, they have a lot of leverage in how they, you know, in agreements they reach. And if they entered into agreement that didn't require Porterfield to send them the notice, why shouldn't we say you're a big boy and know how to make things clearer but didn't and just go by the fact that there's no obligation that's expressly provided? Because I believe that Maryland law says you cannot because of the very question that you raised with opposing counsel. The illusory point? It renders the entire paragraph illusory. But is that how it works? I think that's an interesting argument. And I think if we were talking about a stand-alone agreement that was rendered illusory, that would be real strong. But in the context of a multi-obligation, multi-provision lease, I mean, does the illusory concept really say each and every obligation in that? Can't a party decide that the overall benefits of this lease are such that I'll have something that really doesn't give me much of anything in that one paragraph? I don't think that Maryland law has specifically and expressly determined whether an entire agreement would be illusory or a particular promise. But Maryland law does say a promise. If a promise is made, which I think would imply each individual provision cannot be illusory, and the purpose also supports that because the purpose of not finding or not interpreting a contract in an illusory manner is to give effect to the promises made, all of the promises made. So Maryland law favors a reasonable interpretation that does not result in the provision, the promise, being unenforceable or a forfeiture. And I think that focuses on the language being addressed. And in each of the cases that I have read and cited here, it was focusing on particular provisions within the contract. However, I do agree, Your Honor. I don't recall seeing a case where the distinction between an individual promise and a very complex lease and the whole agreement was addressed by Maryland law. So do we need to find that as a matter of Maryland law for you to prevail that a single provision of a multi-term agreement in and of itself can be sufficient to be deemed illusory without finding the whole? I guess what I'm getting at is if that's necessary for you to prevail, it raises the question of whether we should ask the Maryland Supreme Court to tell us what the law is. And I think if that were the only basis on which this court could uphold the district court's ruling below, I might agree. But I don't think it is the only basis. I think there are a number of contractual canons of Maryland law that are very well established on which this court can affirm. One is reading the provision in the context of the overall paragraph, as I've mentioned, with the other provisions in the paragraph. Two is reading it in a reasonable and common sense manner. Three, there is no such thing as a conditional option under Maryland law. There is a right of first refusal. The concept of conditional option applied in the Straley case was singularly applied to a right of first refusal. It has never in the 55 years since that decision been expanded to any other form of quote-unquote conditional option. What I believe the appellant has done here is taken language uniquely supplied and applied to a right of first refusal. But I don't mean to cut you off. Not at all. I think I understand where you're going. I mean, it seems to me that would substantially limit the rights of parties to form an agreement. I mean, if the only thing Maryland law would allow is a right of first refusal, what if this said that had the first sentence just as it is and said notwithstanding the foregoing, this option shall not apply unless Quarterfield has achieved a net profit of X percent over the first 10 years of the lease. That's not a right of first refusal. That would be a conditional option, and there would be nothing. I mean, what we call it seems to me not as important as looking at the terms and seeing what they say. I mean, you see what I'm saying? A fair point. I know you consider that different than we have here, but it would be maybe a conditional option in giving life to that case that you say doesn't apply. I think that's a fair point, Your Honor, and it might limit. I think that's not our case, obviously.  But in your hypothetical, I think it might limit a party's right of contracting with conditions. Can I move to another issue about whether the right is mandatory?  It seems to me if we agree with you that there is some obligation to send the notice, the third sentence of Section 27 talks about if the notice isn't given by the ninth year, then the year period commences at the time the notice is given whenever it's given. I know that's not exactly right, but I think that's the way it works. I understand the sentence you're referring to, Your Honor. I don't understand how that language, given that language, how you can say they already, or I don't understand the district court's reasoning that the time for giving the notice has taken place. Yeah, I think that the time that the notice has taken place was a separate analysis of what does the 11th year of the lease mean without regard to that provision. However— I want to let you answer, but it seems like if you want to rely on sentence three to say, hey, there's a real option here, you can't run away from it. And it doesn't—I mean, almost by definition, it's talking about some period other than the end of the 11th year. Why doesn't that apply to the whole lease term? That's correct. Let me start the answer here. I agree with you, and I think the conclusion that you're coming to is, doesn't sentence three limit or condition the option period, such that it may not be in the 11th year. It may be at a later time. And I would say that, standing on its own, would. However, you also have to read the next sentence, which says the lessee may exercise the option. Now, let me read the whole sentence. The lessee may exercise the option to purchase the premises by providing 30 days' notice to lessor of its election to exercise the option, herein defined as the option notice. If you read that sentence as conditioned upon the prior sentence, that they can't do that until option notices are sent, then we're back to the original argument, which is they can negate the entire option by simply not sending the notice. I'm not following the connection there. I mean, there's a—that next sentence, I guess four sentences, is talking about how you exercise the option. Right. I don't understand how that sentence relates to the question of when the option must be given. The district court said you've got to do it by the end of the 11th year, I think. And I'm like, I'm trying to see how that—that seems like that's writing in a term to the lease that's not there. I'm not sure I agree with that, Your Honor. I think the district court said two things. It said, one, yes, the judge identified the 11th year from the rent commencement date and defined when the 11th year is under her understanding of an ambiguous term and extrinsic evidence, but then also interpreted when Walmart could send its own notice. Now, we've got to read those two provisions harmoniously. If, based on your question, that we may only send the notice, our exercise of the option, once we receive notice, then the 11th year is meaningless because the option period only begins when the landlord sends notice. So who cares when the 11th year is? It is a superfluous clause. The only way that you can read that clause as having meaning is that the option term is in the 11th year. And one of two things triggers the option. Either the landlord is required to send notice, two notices, which triggers that option before the 11th year begins. But if the landlord doesn't, and this is our case, then Walmart has the right to exercise its option during the 11th year or thereafter. And I think that was the holding of the district court trying to harmonize. All right. So I think fundamentally, Your Honors, that the question here is whether that notwithstanding language and the notice provision is an obligation or a discretionary right. I would like to note one point because you were talking about this is a broad lease, lots of clauses in here. And we cited many of those clauses in our brief, and I would just like to bring them to your attention. Because when the parties wanted to recognize a discretionary right, they used those words. And these are sophisticated parties. And they used the words, tenants shall have the right to send notice. Landlords shall have the right to do something. It is within landlord's sole discretion to do something. But that cuts both ways, right? It could have been more clear in your favor, too. It could have been. But also, when you look at that in context, when the lease has talked about failures to do something, it has implied obligations. Can I switch to one more question related to damages? Of course you can. I'm here to answer your questions. There's this issue about damages.  And I know we've got some standard review issues and things like that. But if a court were to order specific performance, let's assume you win on everything and you get specific performance, wouldn't the way you deal with damages really would be that if you're going to get prejudgment interest on rent that you paid, doesn't the kind of underlying principle of that indicate you would have or should have been able to and had paid the purchase price? So that same period that you paid rent, under your theory, you would have paid the purchase price. You wanted to pay the purchase price to Porterfield, right? Are you saying as a hypothetical? Because we're not claiming prejudgment interest on the rent. I thought you were claiming prejudgment. We dropped that claim. Have you? Yeah, yeah. I got you. I'm sorry. No, that's all right. But I think the underlying issue that you may be alluding to is putting the parties in the position they would have been without the breach. And would they, if you're dropping your prejudgment interest claim, I didn't pick that up. I'm sorry. That's all right. But I'm trying. Okay. That covers that point. Okay. Let me bring you back to what we started with opposing counsel a little bit. The Walmart Real Estate Business Trust, and it's a SAMS business trust as well, have you filed anything that tells us who those beneficiaries are for diversity purposes? We have not, Your Honor. And it was not, as Judge King noted, it has not been challenged or raised. It is a Delaware business trust. It goes to subject matter jurisdiction, doesn't it? And we have an obligation to make sure we have it. So it looks like you ought to file a 28-J letter or something so that we're assured of jurisdiction in this case. Do you still claim that we have jurisdiction? I do. But you're right, and I will. Thank you for bringing up the process. That will be the rest of my day. I see my time is up. If there are no other questions, I'll conclude there and just simply say that I believe that the district court should be affirmed in all respects. Thank you, Your Honors. Thank you. Thank you, Your Honors. I think the point of this lease here is that it is a very long document. I think it's 43 pages, single-spaced and small type. It conveys a whole bundle of rights separate and apart from this purchase option. These are sophisticated parties, and this language, unfortunately, is what was agreed to. But I think the point is that this is what Walmart wanted as well as what Corderfield wanted. The parties agreed to it. They agreed to this language, and they ought to be held to it. Even on the point of whether or not this particular part is illusory, the contract spells out what the parties have agreed to in terms of a framework for how this purchase option is exercised, what the price will be, and how the transaction goes forward. What do you think the Maryland law is on an illusory contract? Does it require the entire contract to be illusory or simply a provision? And does it have to be a key provision that's illusory? Your Honor, I can't cite you to a case on that off the top of my head, but I think logically it should be really the key provision to negate a part of the contract or really, I think, a large part of the contract. Walmart would say it's got to be, I think there's a materiality aspect here. This part material? I mean, that's why we're here. Your Honor, it's one paragraph of a very large lease, and the lease conveys all these other rights that I don't think anybody else is contending are illusory. I'd be happy to submit further briefing on that if the court would like, but I don't think that we're in the position here of having the whole contract struck down for this being illusory, and I don't think it is illusory to begin with because of the rights that are conveyed. This is not an empty gesture. There are rights conveyed here in terms of what would happen if Corderfield did give notice. Really, I think when it comes to— Let's just, if we assume just for argument that we affirm the district court's order in so much as it says that the option was required to be given and is deemed to be given, you made an argument, I think, that there should be some sort of an offset. Do you want to give us 30 seconds on that? Absolutely, Your Honor. When we're talking about specific performance, we're talking about equity, and equity is about fairness in a lot of ways. The damages award here is really the harm work of why this case, why the decisions were unfair to Corderfield. It takes no account for the fact that Corderfield has had these properties. They've occupied them rent-free and while still holding on to the purchase prices for more than five years now. If Walmart had paid this money five years ago, their argument might hold more water, but they haven't. They've retained the benefit of millions of dollars. The total purchase prices for both these properties is, I think, $16.8 million. So are you claiming you should have the time value of that money? Yes, Your Honor. Do you have a – I'm just trying to think how that procedurally would work. I mean, have you made up like a counterclaim, an alternative counterclaim, or are you just saying – because I heard that being like a defense to their claim for prejudgment interest, but they say that's gone. So now you're saying – and I get the economic reason you're saying that. That does kind of follow, but procedurally have you – I don't mean to beat anyone up about how you litigated the case, but I would think you would make a claim for that. That would be an actual claim for relief rather than just coming here and saying do equity. Right, and there was not a counterclaim made, and that was not done below. And it did come up in the context of Walmart's request for prejudgment interest, which was denied, and they cross appealed and then dismissed their cross appeal. But I think it's emblematic of the way these decisions worked in Walmart's favor. You would say that's just inherent as part of a specific performance type of equitable award? I think so, Your Honor. It shows how unfair this was, and really specific performance is reserved for contracts that are absolutely clear. And this one, we say it's unambiguous, but it might be unclear in certain respects. And so I think it's part of decisions that were kind of flowed from each other and created more errors as they went along to create summary judgment. So for those reasons, we ask that the court reverse. Thank you very much. Thank you very much, sir. Appreciate counsel's arguments. We'll come down and recounsel, and then I'm going to exercise my discretion to take a brief break. The honorable court will take a brief recess.
judges: Robert B. King, G. Steven Agee, A. Marvin Quattlebaum Jr.